IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WAI-DOR C. PROCTOR, | ] |
| Plaintiff, | ] |
| | ] CASE NO.: CV-04-HS-437-S |
| v. | ] |
| A.G. EDWARDS & SONS, INC., | ] |
| Defendant. | ] |

# Memorandum of Opinion

ENTERED
OCT 2 5 2004

## I.   INTRODUCTION

This is a civil action filed on March 3, 2004, by the Plaintiff, Wai-Dor C. Proctor, against the Defendant, A.G.Edwards and Sons, Inc. The Plaintiff, appearing pro-se, alleges the following two Counts:

- Count I – Sex and/or National Original Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* in discharge, compensation, and terms, conditions, and privileges of employment.

- Count II – Vacation of Arbitration Award Against the Plaintiff, pursuant to 9 U.S.C. §§ 1-23: 10.

Presently before the Court is Defendant A.G. Edwards & Sons, Inc.'s Motion to Dismiss (doc 3). For the reasons stated herein, the Motion will be **GRANTED** and the case **DISMISSED, with prejudice**.

## II.   STANDARD OF REVIEW

Because the Court has considered matters outside the pleadings, the Motion to Dismiss is properly converted into a Motion for Summary Judgment. Fed. R. Civ. P. 12(b).



> In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

### III. ALLEGATIONS OF THE COMPLAINT

The Plaintiff makes the following allegations in her Complaint:

#### COUNT I

6.  The plaintiff re-alleges and incorporates by reference paragraphs 1-5 above with the same force and effect as if fully set out in specific detail herein below.

7.  Plaintiff is a female of Chinese national origin who was employed as an investment broker (Financial Consultant) from September 1990 to December 1, 1997 in defendant's Birmingham, Alabama office.

8.  As a condition of her employment plaintiff signed a U-4 form, National Association of Securities Dealers, Inc. ("NASD") Uniform Application for Securities Industry Registration or Transfer, which provided that any dispute, claim or controversy arising between her and her employer was required to be arbitrated.

9.  Requiring arbitration instead of allowing an employee the option of litigating their claim in court was upheld by the United States Supreme Court in Gilmer v. Interstate/Johnson Lane Corporation, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed. 2d 26 (1991).

10. Defendant terminated the plaintiff's employment on December 1, 1997.

11. Plaintiff timely filed an EEOC charge that she had been terminated due to her sex and national origin and that she was retaliated against by the defendant.

2

12. A right to sue letter from the EEOC dated February 26, 1999 was received by the plaintiff.

13. On May 7, 1999, plaintiff filed arbitration proceedings pursuant to NASD regulations as she was required to do if she desired to contest her termination of employment.

14. On October 27, 1999, NASD created special rules applicable to the arbitration of discrimination claims.

15. Those regulations removed from the Code of Arbitration Procedure the requirement of registered persons to arbitrate claims of statutory employment discrimination, but NASD claimed they were not retroactive for pending claims.

16. New Rule 10211(a) provides that only arbitrators classified as public (non-industry) arbitrators will be selected to consider disputes involving a claim of employment discrimination.

17. The chairpersons under new Rule 10211(b) must have substantial familiarity with employment law and ten or more years of legal experience as well as meet other specific requirements of Rule 10211(b).

18. On information and belief none of the arbitration panel members on the plaintiff's claim met the requirements of New Rule 10211.

19. Rule 10330(e) in effect when the plaintiff filed for arbitration provides that certain information be contained in an arbitration award, but that rule does not require that the reasons for the arbitrator's decision be stated.

20. Rule 52(a) of the Federal Rules of Civil Procedure proves that in all actions "tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law there . . . ."(emphasis supplied).

21. On May 29, 2002, the arbitration panel rendered a decision denying all of the plaintiff's claims.

22. In the arbitration award no findings of fact concerning the plaintiff's claims of discrimination or retaliation were made nor were there any conclusions of law, but rather the award stated:

Claimant's claims are denied in their entirety.

>The Panel recommended the expungement of the reasons for termination stated on the Claimant's Form U-5 based on the defamatory nature of the information in the CRD system. As such, the Form U-5 should read as follows: "Claimant was discharged without cause, but the discharge was not unlawful."

23. On August 23, 2002 the plaintiff filed a motion to vacate the arbitration award in the Circuit Court of Jefferson County, CV02-5103.

24. Plaintiff contended that the award was contradictory by the "defamatory nature of the information in the CRD system," but not awarding her any monetary relief.

25. On January 6, 2003 the Circuit Court of Jefferson County entered an order referring the case back to the arbitration panel.

26. On April 15, 2003 the arbitration panel issued an amended award which in relevant part stated by eliminating the first paragraph of page 3 on the Award dated May 20, 2002 and in lieu thereof substituting the following:

>The panel recommends the expungement of the reasons for termination stated on Claimant's Form U-5 based upon the defamatory nature of the information in the CRD system. As such, the Form U-5 should read as follows: Claimant was discharged without cause, but the discharge was not unlawful. While claimant failed to prove all necessary elements for recovery on her defamation claim, the above wording is used pursuant to NASD Notice to Members 99-09 to authorize immediate expungement, without the requirement that Claimant have the award confirmed by a court of competent jurisdiction.

27. Plaintiff filed a motion to vacate the amended panel's decision on July 2, 2003.

28. On October 27, 2003, the Circuit Court of Jefferson County issued an order denying the motion to vacate and for a new panel.

29. On November 25, 2003, pursuant to Rule 59(e) of the Alabama Rules of Civil Procedure plaintiff filed a motion to reconsider.

30. On February 27, 2004, the Circuit Court issued an order denying motion to reconsider, and stated, "Whether Ms. Proctor has a separate claim under Title VII of the Civil Rights Act is not before this Court."

31.   Plaintiff was treated differently than males who were Americans.

32.   Pretextual reasons were given for the plaintiff's termination.

33.   On information and belief the plaintiff's supervisor told others employees concerning the plaintiff, "I will never hire another female broker."

34.   On another occasion, the plaintiff's supervisor told her, "I will no longer treat you as one of the good old boys in the office."

35.   On one occasion, the plaintiff was told by the plaintiff's supervisor, "You are a Chinese and you don't understand what lie means. . . ."

36.   Many of the plaintiff's customers were Chinese speaking individuals.

37.   On December 1, 1997 the plaintiff charged her supervisor with gender harassment making a written complaint A.G. Edwards headquarters.

38.   On December 10, 1997, plaintiff's supervisor put untrue and defamatory language in her U-5 form making obtaining employment at other brokerage firms either impossible or difficult.

39.   On information and belief the plaintiff was discriminated against, because of her sex and/or national origin in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. in discharge, compensation, and terms, conditions, and privileges of employment.

40.   Plaintiff also was retaliated against in violation of Title VII.

41.   As a consequence of the defendants' unlawful conduct, plaintiff suffered damages, including but not limited to lost wages, embarrassment, humiliation, shame, damage to reputation, mental distress and emotional pain and anguish.

42.   The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, injunctive and declaratory judgment is the only means of securing adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## **COUNT II**

43.   Plaintiff re-alleges and incorporates by reference paragraphs 1-42

above with the same force and effect as if fully set out in specific detail herein below.

44.     This arbitration award is deficit in that it makes no findings of fact or conclusions of law, thereby denying effective review of the decision.

45.     The arbitration award is arbitrary and capricious.

46.     As an example during the hearing one of the panel members sought to cut-off testimony of the plaintiff's damages, assuming that backpay was the only remedy at issue and not considering compensatory and punitive damages.

47.     The arbitration award did not have a rational basis.

48.     The arbitration award is contrary to public policy.

49.     One of the arbitration panel members had a conflict of interest by their parents having a brokerage account with A.G. Edwards and did not recuse herself.

50.     There was an institutional bias in the arbitration panel in the instant case.

51.     There was a manifest disregard of the applicable law concerning discrimination claims.

52.     The absence of an opinion which contained findings of fact and conclusions of law consistent with Fed. R. Civ. P. 52 established with the other facts in this case that there was a manifest disregard of the facts and/or law.

53.     Pursuant to 9 U.S.C. §§ 1-23; 10 the award with respect to any discrimination claims, including the retaliation claim is due to be vacated.

## IV.    DISCUSSION

### A.    The Title VII Claims (Count I)

Title VII requires that a civil action be filed in Federal Court within 90 days of receipt of a right to sue letter from the EEOC.[1] 42 U.S.C. § 2000e-5(f). The allegations of the Complaint, taken

---

[1] 42 U.S.C. § 2000e-5(f) reads:

If a charge filed with the Commission pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the

6

as true, as this Court must at the Motion to Dismiss stage, establish that the Plaintiff filed the Complaint on March 3, 2004. The Plaintiff received the EEOC's February 26, 1999, right to sue letter "[o]n or about" March 2, 1999. *Complaint*, at 3; *Plaintiff's Opposition to Motion to Dismiss*, at 3. The alleged receipt date of the right to sue letter is almost exactly 5 years before the filing of the present action. This places the instant lawsuit well beyond the limitations period.

The Plaintiff alleges that she "was forced to" file NASD arbitration against Defendants on her Title VII claims. *Plaintiff's Opposition to Motion to Dismiss*, at 3; *Complaint*, at 2-3. According to the pleadings, the latest that arbitration proceedings were initiated was 80 days after receipt of the right to sue letter. She then states, without any authority, the following proposition:

> Since Proctor had been forced to pursue NASD arbitration, the 90 day deadline to file suit had been stayed while the arbitration and its appeal process took place and the state court action had been pending to set it aside, to protect her rights, therefore, Proctor's filing of her Complaint with this Court was timely and proper.

*Plaintiff's Opposition to Motion to Dismiss*, at 4. There is no allegation that the NASD arbitration somehow foreclosed the Plaintiff from filing suit in Federal Court to protect her rights, just that she was obliged to pursue arbitration also.

---

> filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge
>
> (A) by the person claiming to be aggrieved.

42 U.S.C. § 2000e-5(f).

Despite the wording of the Plaintiff's brief, the doctrine she attempts to employ is the doctrine of equitable tolling. While generally applicable to the limitations periods contained in Title VII, the United States Supreme Court has held:

> we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made. Cf. *id.*, at 234-235, 97 S.Ct. at 446.

*Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 506 (1980). Applying this principal in *Stafford v. Muscogee County Bd. of Educ.,* 688 F.2d 1383, 1388 (11th Cir. 1982), the Eleventh Circuit, following Supreme Court precedent, found that submission of one's case to the employer's internal grievance procedure did not toll the requirement that the employee file a charge with the EEOC within 180 days of the complained-of conduct. The Court wrote:

> Essentially, [the Plaintiff] argues that this limitations period should be tolled during the time that he was pursuing the grievance proceedings established by the [employer] . . . . We must reject these arguments. The pursuit of these independent remedies does not affect [the Plaintiff's] duty to assert his Title VII claims within the limitations period. The Supreme Court has squarely rejected the argument that Title VII time limitations should be tolled during the pendency of contractual grievance proceedings. *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980); *International Union of Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236-40, 97 S.Ct. 441, 447-449, 50 L.Ed.2d 427 (1976).

*Stafford v. Muscogee County Bd. of Educ.,* 688 F.2d 1383, 1388 (11th Cir. 1982).

The issue remains, however, as to whether the law in the Eleventh Circuit holds that an employee who engages in *mandatory* arbitration of her Title VII claims has her 90 day statute of limitations tolled during that period. The Court has found no Eleventh Circuit precedent on point,

8

but the prevailing law in other Circuits is that such an action does not toll the period. *See Maddox v. Runyon*, 139 F.3d 1017 (5th Cir. 1998) (former Postal Service employee's pursuit of internal grievance procedures was not administrative remedy that employee was required to exhaust before bringing Title VII action, and thus failure to defer action on employee's Equal Employment Opportunity (EEO) complaint until completion of arbitration procedures invoked under grievance procedures did not excuse untimeliness of Title VII action); *Rudolph v. Wagner Elec. Corp.*, 586 F.2d 90 (8th Cir. 1978) (employer's failure to remedy employee's allegedly illegal discharge during grievance and arbitration process did not constitute a "continuing violation" for purposes of Title VII limitations period); *Stewart v. Memphis Housing Authority*, 2003 WL 22368158 (W.D.Tenn. 2003) (equitable tolling was not warranted for the 90-day filing requirement for claim of racial discrimination and retaliation in violation of Title VII, where, inter alia, although Plaintiff seemed to think arbitration was prerequisite to suit, Defendant made no such representation, Plaintiff was represented by counsel for significant period, and he waited over two years after statute of limitations had run to bring suit); *McFarland v. Metro-North Commuter R.R.*, 993 F.Supp. 210 (S.D.N.Y. 1998)(allegation of employee that he failed to file Title VII suit until after statutory deadline because he was unable to find counsel and because he was waiting for union arbitration against employer to be resolved did not warrant equitable tolling of statutory deadline).

Based on the Eleventh Circuit's reasoning in *Stafford*, the Court concludes that the Eleventh Circuit would follow the logic of the above cited cases. In the instant case, there is no allegation that the Plaintiff was precluded from filing her Title VII claim because of the arbitration proceeding, there is no allegation that Defendant represented to Plaintiff that the arbitration proceeding was a prerequisite to filing suit, and the Plaintiff waited 5 years before filing suit in Federal court. As in

*Stafford*, the existence of mandatory, privately contracted for grievance procedures does not change the rule that the period within which to file a claim begins to run upon receipt of the right to sue letter. Because the Plaintiff did not meet the statutory deadline, the Motion to Dismiss, converted to a Motion for Summary Judgment, is due to be **GRANTED**.[2]

### B. Vacation of Arbitration Award Against the Plaintiff, pursuant to 9 U.S.C. § 10 (Count II)

The Plaintiff's remaining Count is brought under 9 U.S.C. § 10 to vacate the earlier arbitration award. 9 U.S.C. § 10 reads as follows:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
>
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10. The underlying state court action was brought under the same statute, for the same purpose--vacating the arbitration award. *Motion to Vacate Arbitration Award*, at 1.

The Defendant contends that *res judicata* bars the instant action.

Res judicata may be properly applied only if certain prerequisites are met. In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the

---

[2]Because the Court determines that the Title VII claims are time barred, there is no need to address the Defendant's contention that these claims are barred by the doctrine of *res judicata*.

merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. *See Israel Discount Bank Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir.1992); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990). The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies.

*In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). All four elements are satisfied in this case. The Complaint and evidence presented establish that the Jefferson County Circuit Court, a court of competent jurisdiction, ruled on the issue of vacating the arbitration award–the same cause of action at issue in this case. This case involves the same parties as the prior case. There is no evidence that any new issue is being raised here which was not or could not have been raised in that proceeding. The issue of whether to vacate the arbitration award has been decided. The Motion to Dismiss Count II, converted to a Motion for Summary Judgment, will therefore be **GRANTED**.

DONE this 22 day of October, 2004.

VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE

11